# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| Tommy J. Tompkins, Jr., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: |
| v. | ) | 20-cv-118 |
| | ) | |
| Optimum Wealth Management, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

---

## COMPLAINT

---

COMES NOW the Plaintiff, by and through his attorney, and avers against the Defendant the following:

### INTRODUCTION

"[T]he right to be let alone – the most comprehensive of rights and the right most valued by civilized men."  Olmstead v. United States, 277 U.S. 438 (1928)(Justice Louis D. Brandeis, *dissenting*).

This lawsuit seeks an award of damages against the Defendant for its numerous telephone calls to the cellular phone of the Plaintiff, which the Plaintiff intends to show were made in violation of the federal Telephone Consumer Protection Act, ("TCPA"), 47 U.S.C. §227, *et seq.* and the orders, rules, and regulations promulgated by the Federal Communications Commission relating to the TCPA, the National Do-Not-Call registry, and which also constituted intentional and unwarranted invasions into his privacy.

### PARTIES

1. Plaintiff is a natural person and a resident citizen of Mobile County, Alabama

and has been so for over two years.

2. Defendant Optimum Wealth Management, Inc. ("Optimum") is a California Corporation doing business as "Optimum Tax Law" and whose principal place of business is 15233 Ventura Blvd. Suite 500, Sherman Oaks, CA 91423 and who is engaged in the business of selling and providing financial services.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 47 U.S.C. §227(b)(3) to hear this action.

4. This Court has personal jurisdiction over the Defendants because the Defendants are currently engaged in business relationships with customers in Alabama.

5. Venue is proper as substantially all of the events or omissions giving rise to the Plaintiff's claims occurred in this County.

## FACTUAL ALLEGATIONS

6. It is a sad fact of modern life that many of the businesses we deal with daily simply are not willing to spare the time to speak to us with a human voice.

7. Rather than make phone calls by dialing with human fingers, many businesses prefer to cut costs by using "automatic telephone dialing systems," commonly referred to as "autodialers."

8. "Autodialing" is the use of computerized telephone systems to place calls automatically, without manually dialing numbers, and only to connect the calls to live persons when the computer detects that a live human target has answered the call.  Or worse, to simply leave a prerecorded message from a robot voice.

9. Autodialing allows businesses to place massive amounts of telephone calls at minimal costs, because there are almost no humans involved in the effort.

10. In addition to being intensely annoying, autodialing can actually cost the recipients of the calls money, because cell phone users must pay their cellular service providers for airtime, data usage, and text messages.

11. Congress recognized both the material and intangible damages caused by unwarranted auto-dialed phone calls in enacting the TCPA"

"The Committee believes that Federal legislation is necessary to protect the public from automated telephone calls.  These calls can be an invasion of privacy, an impediment to interstate commerce, and a disruption to essential public safety services."  S.Rep.No. 102-178, at 5, reprinted in 1991 U.S.C.C.A.N. 1968, 1972-73 (1991).

12. This case provides a fine example of why the TCPA exists.

13. Beginning in March 2019, the Plaintiff began receiving telephone calls from a call center working on behalf of the Defendant.[1]

14. Defendant made these prohibited phone calls to the Plaintiff on many dates, including but not limited to the following:

    (a) March 12, 2019 (1 call);

    (b) March 13, 2019 (3 calls);

    (c) March 18, 2019 (2 calls);

    (d) March 19, 2019 (3 calls);

    (e) March 20, 2019 (2 calls);

    (f) March 21, 2019 (3 calls);

    (g) March 22, 2019 (2 calls);

    (h) March 25, 2019 (3 calls);

    (i) March 29, 2019 (1 call);

15. Since March 12, 2019, Defendant made at least 20 telephone calls to the Plaintiff's cellular telephone at (251)753-7871.

16. Upon information and belief, all of the calls made by the Defendant to the Plaintiff were made using an automatic telephone dialing system, because they were made using equipment that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator and/or a predictive dialer, with the capacity to dial such numbers.

17. Based on his conversations with agents of the Defendant, Plaintiff believes that

---

1   Upon answering the calls, Mr. Tompkins was informed that they were from the "Enrollment Center for the Tax Relief Network."  Mr. Tompkins was then transferred to one "Robert Preston" who identified himself as an employee of the Defendant, which does business as "Optimum Tax Law."

they were made in an effort to sell financial services to the Plaintiff.

18. At all times relevant to this proceeding, the Plaintiff's cellular telephone number has been listed on the FTC's Do Not Call Registry.

19. Mr. Tompkins never provided the Defendant or its call center with express written consent to receive telephone calls of any sort.

20. At the time the phone calls were made, Defendant had no established business relationship with the Plaintiff.

21. Several of the telephone calls Defendant made to Mr. Tompkins appeared on Caller ID as local telephone numbers, with a 251 area code.

22. This caused Mr. Tompkins to feel obligated to answer the calls, just in case they had a legitimate purpose.

23. Unfortunately, none of Defendant's numerous telephone calls had a legitimate purpose.

24. All of the calls were telemarketing calls, because each of them were made for the purpose of encouraging the Plaintiff to purchase financial services. *47 CFR §1200(f)(12)*.

25. The Defendant made at least ten telemarketing calls to the Plaintiff within a 12 month period, during which entire time, the Plaintiff's number was listed on the national Do-Not-Call registry.

26. All of the calls were made to Mr. Tompkins' cell phone, which he pays for through a contract with Verizon Wireless.

27. Mr. Tompkins' cell phone number has been assigned to Verizon as a cellular phone number for many years now.

28. Defendants know and have always known that Mr. Tompkins's number was assigned to a cellular telephone service.

29. None of Defendant's telephone calls were made for an emergency purpose.

30. None of the Defendant's telephone calls were made with the Plaintiff's consent.

31. Defendant's conduct has been severely frustrating to the Plaintiff.

32. The Defendant's conduct has also caused the Plaintiff damages in the form of lost cell phone minutes, battery power, and data.

<u>COUNT ONE: TELEPHONE CONSUMER PROTECTION ACT</u>

33. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 32 above.

34. The Telephone Consumer Protection Act declares:

"**It shall be unlawful for any person** within the United States, or any person outside the United States if the recipient is within the United States -

**to make any call** (other than a call made for emergency purposes or made with the prior express consent of the called party ) using any automatic telephone dialing system or an artificial or prerecorded voice--

t**o any telephone number assigned to a**...**cellular telephone service**..." 47 U.S.C. §227(b)(1).

35. This prohibition is repeated and clarified in the FCC's regulation implementing the TCPA, 47 C.F.R. §64.1200(a)(1)(iii).

36. The TCPA further provides that a person or entity whose rights under the TCPA are violated may bring an action to enjoin such violation or for monetary damages.  47 U.S.C. §227(b)(3).

37. The TCPA prescribes statutory damages equal to $500 per phone call.

38. The TCPA also provides that where the Defendant has acted knowingly, the statutory damages may be increased to $1,500 per phone call, in the Court's discretion.

39. All of Defendants' telephone calls to Mr. Tompkins were made in violation of the TCPA.

40. All of the Defendant's telephone calls to the Mr. Tompkins were "telephone solicitations" within the meaning of 47 U.S.C. §227(a)(4).

41. At least ten of Defendant's telephone calls to Mr. Tompkins were made with knowledge that the calls were in violation of the TCPA.

42. Defendant violated the TCPA by using an automatic dialing system to call the Plaintiff's cellular telephone without the Plaintiff's consent.

43. Defendant violated the TCPA by fialing to properly scrub the national Do-Not-Call list as required by the FCC.

44. Defendant violated the TCPA by failing to properly maintain and update its company specific Do-Not-Call list.

45. Defendant violated the TCPA by failing to add the Plaintiff to its Do-Not-Call list.

46. The TCPA further states that "A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may...bring in an appropriate court of that State—(A) an action base don a violation of the regulations prescribed under this subsection to enjoin such violation; (B) an action to recover for actual monetary loss from such violation or to receive up to $500 in damages for each such violation, whichever is greater, or (C) both such actions." *47 U.S.C. §227(c)(5).*

47. Plaintiff requests judgment against the Defendant for $1,500 per telephone call for each call made using an automatic dialing system. *47 U.S.C. §227(b)(3).*

48. Plaintiff requests judgment against the Defendant for $1500 per telephone call for each call made while the Plaintiff's cellular phone number was listed on the National Do-Not-Call registry. *47 U.S.C. §227(c)(5)*

49. Plaintiff also seeks an injunction against future telephone calls and violations of the TCPA.

WHEREFORE, PREMISES CONSIDERED, Your Plaintiff respectfully prays this Honorable Court Issue an Order against the Defendants for the following:

A) An injunction requiring the Defendant to cease all communications in violation of the TCPA;

B) Statutory damages of $500 per call;

C) Willfulness damages of $1,500 per call;

D) For such other, further, and general relief as Your Honor deems just and proper.

RESPECTFULLY SUBMITTED this 2nd Day of March, 2020.

/s/ Judson E. Crump

Judson E. Crump
Attorney for Plaintiff

Judson E. Crump, PC
250 Congress Street

Mobile, AL 36603
251.272.9148
judson@judsonecrump.com